# Richard J. Kaufman, P.C.

ATTORNEY AT LAW
646 Main Street
Port Jefferson, New York 11777
(631) 331-0950
Fax (631) 474-4282

October 28, 2020

**VIA ECF**
Judge Joan M. Azrack
United States District Court for the Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722

Re: *State of New York et al. v. Crescent Group Realty, Inc. et al.*
Case No. 17-cv-06739-JMA_AYS

Dear Judge Azrack:

On behalf of defendant Kenneth Auerbach, pro se and defendants Dominick Mavellia, and Eugene Smith by Richard J. Kaufman, P.C. this joint letter is respectfully submitted pursuant to the Court's rules requesting permission for a pre-motion conference and to move for pre-answer dismissal of plaintiffs' Second Amended Complaint pursuant to FRCP 12(b)(6), for failure to state a claim upon which relief can be granted as against the individual defendants --Mavellia, Auerbach and Smith-- only.

*Background*

In November 2017 plaintiffs State of New York and Basil Seggos ("plaintiffs") commenced this action solely against the unrelated prior owner of the premises, the Estate of Irving Levey. Thereafter, an Amended Complaint was filed in February 2018 to include the Crescent Defendants. After obtaining permission from Magistrate Judge Shields on October 8, 2020, plaintiffs filed a Second Amended Complaint in order to assert a claim of "operator" liability against Mr. Auerbach, individually, having already alleged such "operator" liability against defendants Crescent Group Realty, Inc. and Mr. Mavellia. Notably, the amended pleading makes no allegation whatsoever that Mr. Smith played any role as a so-called "operator" (¶11) as contrasted with the allegations, however bare, against Mr. Mavellia (¶9) or Mr. Auerbach (¶10).

Plaintiffs' pleading consists of 140 numbered paragraphs which, like its prior iteration, sets forth at length the more than 50-year history of the contaminated site in issue ("the Site"), that is, 1305 South Strong Avenue, Copiague, New York. Most of this historical recital has nothing whatsoever to do with any of the defendants and none of it alleges anywhere within its four corners that any of the individual defendants ever participated or contributed in any way to the pollution for which plaintiffs seek damages.

Specifically, ¶¶ 21 through 66, recite the history of the Site from 1951 through May 2005 describing how the Site's *prior* owners operated businesses which resulted in its being contaminated

1

with volatile organic compounds, the last possible alleged contamination having occurred, according to the pleading, no later than the year 2002 or 2003 (¶¶62,63), prior to Crescent Group's ownership. Moreover, it is alleged that in May, 2005 "the DEC designated the site as a Potential Registry Site under New York State's Inactive Hazardous Waste Disposal Site Program ("State Superfund Program")", the operative word being "Inactive" (¶66). Thus, the pleading itself confirms that there was absolutely no active conduct contributing to the contamination after May 2005.

The pleading also confirms that none of the defendants entered onto the scene until, at the earliest, November 2005 (¶67).[1] In 2006 defendant "Mavellia applied…to clean up the Site under New York State's Brownfield Cleanup Program" (¶69) and that "[u]nder the Brownfields[*sic*] Cleanup Program, an accepted applicant agrees to clean up a hazardous waste site in return for tax benefits" (¶71). What the pleading conveniently leaves out, and what distinguishes this case from every other CERCLA case, is that the next allegation should have been the indisputable fact that plaintiffs actually accepted the applicant into the program in August 2007. In the Citizens Participation Plan report issuing approval, the DEC itself specifically and conclusively declared that:

"…**that the Applicant [defendant Crescent Group] was not responsible for the disposal or discharge of the contaminants or whose ownership or operation of the site took place after the discharge or disposal of contaminants**"[*emphasis as supplied in the original report*] [2]

*Basis for Relief Requested*

Although not so delineated as separate causes of action, plaintiffs rely on two disparate theories to impose CERCLA liability upon the individual defendants: first, that each individual is "strictly liable" on their own, jointly and severally, as "current operators" under 42 U.S.C. §9607(a)(1) and, second, in the event that their own individual conduct did otherwise not rise to the level of "operation", that the corporate veil should be pierced and they should be held "strictly liable" under CERCLA for whatever their *sham* corporation, Crescent Group, Inc. is otherwise liable for. In neither instance is there sufficient factual allegations to sustain these claims.

With respect to the first theory, that is, strict liability based upon the individuals' own actions, plaintiffs appear to rely solely on a plain reading of the statute which allows a CERCLA action to be brought against a "current owner or operator" of a contaminated property. In this case, there is no question that the "owner" of the Site was the corporate defendant. As for the individual defendants being held liable as "operators", except for vague, generalized references to Mr. Mavellia and Mr. Auerbach having "operated" the Site, there is absolutely no facts alleged whatsoever that any of the individual defendants --Mavellia, Auerbach or Smith-- ever "specifically directed, sanctioned, or actively participated in the activities that led to the release of hazardous substances" (*Delaney v. Town of Carmel*, 55 F. Supp. 2d 237 (S.D.N.Y. 1999), *emphasis supplied*). Regardless of the various applications of this case over the years, there remains no question that being an "operator" still requires a fundamental level of control over the pollution sought to be compensated for. As more recently pointed out by this Court in *Town of Islip v. Thomas Datre, Jr.*, 245 F.Supp.3d 397 (E.D.N.Y., 2017) the Supreme Court in *United States v. Bestfoods*, 524 U.S. 51, 66–67, 118 S.Ct. 1876, 141 L.Ed.2d 43

---

[1] In actuality, the proof adduced through discovery establishes incontrovertibly it was at least 15 years since there was any active contribution to the contamination by any person or company.

[2] Plaintiffs having themselves referred to their program, it is respectfully submitted that reference to plaintiff's own document should implicitly be incorporated by reference (*White Plains H. Auth. v. Getty Properties*. 2014 WL 7183991 (S.D.N.Y, 2014)).

(1998) has made clear that the definition implies more than that just in referring to the bare words of the statute:

> "[S]harpen[ing]" this definition, the Court ruled that, to be held liable as an "operator," a defendant "must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." Id. at 66–67, 118 S.Ct. 1876. The Second Circuit has held that the Supreme Court's "sharpened construction" of the term "operator" is "sufficiently broad to extend beyond titular owners and day-to-day operators," **but still "implies a level of control over the hazardous substances at issue."** AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 444 (2d Cir. 2009)" (*emphasis supplied*)

It is axiomatic that while Rule 12(b) does not require "detailed factual allegations" to successfully defeat an application, it does require more than mere "labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and that a complaint will not suffice if it offers mere "naked assertion[s] devoid of further factual enhancement" *Id,* as does the instant pleading. Even the most liberal reading of the amended pleading establishes nothing more than that all of the activities that "led to the release of the hazardous substances" occurred prior in time to when any of the Crescent defendants took control and that the allegations of individuals' so-called "direct[ing], manag[ing] and control[ing] the affairs of the Site" (¶86) amount to nothing more than *post facto* clean-up attempts in conjunction with the pollution decisions <u>made and controlled by plaintiffs themselves</u>. It is respectfully submitted, that even in the absence of plaintiffs' significant failure to allege plaintiff DEC's own imprimatur on absolving the Crescent defendants from ownership or operational responsibility, there is no reasonable inference that can be drawn that the individual defendants (or even the corporation for that matter) were "responsible parties" within the meaning of the statute (*Delaney v. Town of Carmel, supra*; *See also United States v. Lawrence Aviation*, 2019 WL 1259791 (E.D.N.Y. 2019)).

As for plaintiffs' second theory of liability, piercing the corporate veil, the pleading is likewise fatally defective. It is beyond peradventure that under New York law, to state a viable claim against a shareholder of a corporation in his or her individual capacity for actions purportedly taken on behalf of the corporation, plaintiff must allege facts that, if proved, indicate that the shareholder not only exercised complete domination and control over the corporation but that the shareholder actually "abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice" (*East Hampton Union Free School Dist. V. Sandpebble Bldrs., Inc.*, 16 N.Y.3d 775 (2011) (quoting *Matter of Morris v. New York State Dept. of Taxation & Fin.*, 82 N.Y.2d 135 (1993)) "A plaintiff must do more than merely allege that the individual engaged in improper acts or acted in 'bad faith' while representing the corporation" *Id.* at 776. Here, as in *East Hampton*, plaintiffs have utterly failed to allege any such facts whatsoever indicating that the individual defendants engaged in acts amounting to an abuse or perversion of the corporate form or that their actions were anything other making ordinary garden-variety use of the corporate form nor is there even any effort made to allege that the facts that are stated actually constitute an attempt to use "the corporate form to perpetrate a wrong or injustice" (*see East Hampton, supra*)

Accordingly, it is respectfully requested that the defendants be granted leave to file a pre-Answer motion to dismiss pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can

be granted, or in the alternative, for the Court to consider the submission of this letter as an application for such relief and grant such opportunity to present submission(s) as it may deem necessary and proper.

Respectfully submitted,

/s/ Kenneth A. Auerbach
/s/ Richard J. Kaufman