STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
ENVIRONMENTAL PROTECTION BUREAU

November 12, 2020

**BY ECF**
Honorable Joan M. Azrack
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 920
Central Islip, New York 11722

    Re: *State of New York v. Crescent Group Realty Inc.*, No. 17-cv-06739

Dear Judge Azrack:

  This office represents the plaintiffs (the State) in this Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) action to recover the State's costs at a site in Copiague, New York (the Site). We write to oppose the letter by defendants Kenneth Auerbach, Dominick Mavellia, and Eugene Smith for a pre-motion conference on a motion to dismiss the Second Amended Complaint (SAC) for failure to state a claim. ECF No. 86. These defendants, sued individually (the Individual Defendants), are the shareholders and officers of defendant Crescent Group Realty Inc. (Crescent), which the letter does not seek to dismiss.

  The Individual Defendants argue that the SAC does not sufficiently allege that Mavellia and Auerbach are liable as "operators" under CERCLA, 42 U.S.C. § 9607(a) or that Crescent's corporate veil should be pierced to hold Mavellia, Auerbach, and Smith individually liable.[1] That is incorrect. The SAC plausibly pleads CERCLA operator-liability claims against Mavellia and Auerbach: it asserts facts showing that Mavellia and Auerbach made decisions about operating the site, including the decision to not comply with Crescent's obligation to clean up the Site pursuant to a Brownfields Cleanup Agreement into which it had entered. The SAC further pleads veil-piercing liability against each Individual Defendant for his role in dominating and undercapitalizing Crescent to render it judgment-proof against its CERCLA liability.

  *1. Magistrate Judge Shields's September 24, 2020 order granting leave to amend is law of the case with respect to the State's operator-liability claims.*

  The State recently moved for leave to file the SAC and include an additional claim of individual operator liability under CERCLA against Auerbach and further allegations regarding the operator liability of Crescent, Auerbach, and Mavellia. ECF No. 80. The Individual Defendants opposed that motion, arguing, as they do here, that there was no basis for the State's claims of individual CERCLA operator liability against Crescent, Auerbach, and Mavellia or basis for veil-piercing against the Individual Defendants because they had no "direct control of

---

[1] The Individual Defendants' statement that the SAC asserts operator liability against "each individual" is mistaken. Letter, ECF No. 86, at 2. The SAC does not assert CERCLA operator liability against Smith.

the daily operations and which actually caused the contamination, the creation itself or its transportation or disposal." ECF 82 at 2-3; ECF 83. In granting the State's motion for leave to amend, ECF No. 84, Magistrate Judge Shields implicitly rejected those arguments. *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 252 (2d Cir. 2017) (proposed amendments that fail to state a claim under Rule 12(b)(6) are futile and must be denied).

Defendants have not sought reconsideration of that decision or otherwise challenged it. Magistrate Judge Shields's order rejecting these arguments and granting leave to amend is thus law of the case, and the Court has discretion to reject the motion to dismiss operator liability for this reason alone. *Legal Aid Society v. City of New York*, 114 F. Supp. 2d 204, 224 (S.D.N.Y. 2000) (law of the case applies to issues resolved by necessary implication of an earlier decision); *Firestone v. Berrios*, 42 F.Supp.3d 403 (E.D.N.Y. 2013) (motion to dismiss denied where state court's grant of leave to amend was deemed law of the case). Regardless, the SAC, as set forth below, plausibly pleads the claims defendants seek to dismiss.

### 2. The SAC plausibly states operator claims against Mavellia and Auerbach.

To survive a motion to dismiss, a complaint need only plead "enough facts to state a claim to relief that is plausible on its face[,]" and the Court must "accept[] as true all factual claims in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). Current owners and operators are statutorily responsible parties under CERCLA. 42 U.S.C. § 9607(a). Under *United States v. Bestfoods*, 524 U.S. 51 (1998), an "operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or *decisions about compliance with environmental regulations*." *Id.* at 66-67 (emphasis added). Similarly, this Court found a defendant liable as an operator where he "was the decision-maker at [the company] and… was responsible for making decisions about the extent of [the company]'s compliance with environmental regulations." *United States v. Lawrence Aviation Industries, Inc.*, 2019 WL 1259791 at *15 (Azrack, J.).

The SAC alleges pleads sufficient facts to state a claim of operator liability against Mavellia and Auerbach, including that Mavellia, Crescent's Chief Executive Officer, and Auerbach, its Treasurer, both made the key decisions about operating the Site as a real estate asset, including maintaining, marketing, and considering redevelopment of the Site. SAC ¶¶ 86, 97. It further alleges that Mavellia and Auerbach made "decisions about compliance with environmental regulations," or in their case, the decision *not* to fulfill their obligations to clean up the Site. In their capacity as officers of Crescent, the Individual Defendants applied to the Department of Environmental Conservation's (DEC) Brownfield Cleanup Program to clean up the Site in return for tax credits. SAC ¶¶ 70, 89. In connection with their application, Mavellia and Auerbach proposed a remedial work plan to determine whether contamination at the Site, of which they were already aware was emanating from cesspools at the Site. SAC ¶¶ 71-72, 90. Although Crescent was accepted into the Program, and DEC approved their work plan, Auerbach and Mavellia decided not to carry out the work plan because they felt DEC's cleanup requirements were too onerous. SAC ¶¶ 89-92, 96. As a result, DEC terminated defendants' participation in the Brownfield Cleanup Program and itself removed the cesspools, which were leaking contaminants. SAC ¶¶ 92-94, 111-116.

### 3. The SAC alleges facts sufficient to pierce Crescent's corporate veil.

To pierce the corporate veil under New York law, a plaintiff must allege "(i) that the owner exercised complete domination over the corporation with respect to the transaction at

2

issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir.1991). In determining whether an owner exercised complete domination, courts look to factors such as the absence of corporate formalities; inadequate capitalization; the amount of business discretion displayed by the dominated corporation; and whether related entities deal with the dominated corporation at arms length. *Id.* However, "there is no set rule as to how many. . . factors must be present in order to pierce the veil." *William Wrigley Jr. Co. v. Waters,* 890 F.2d 594, 600-01 (2d Cir.1989).

The SAC alleges sufficient facts to pierce Crescent's corporate veil. First, the SAC plausibly alleges that the Individual Defendants have exercised complete control over Crescent from its inception. Crescent has never had a bank account or any other source of funds; Mavellia or Auerbach or an entity one of them controlled paid all of its expenses. SAC ¶¶ 81-85, 95. Crescent Group does not keep records such as profit-and-loss statements or balance sheets. SAC ¶ 104. It has no employees. SAC ¶ 103. Its corporate address is Mavellia's office. SAC ¶ 104. Crescent Group also fails to adhere to corporate formalities in the conduct of its business. SAC ¶ 106. Although the Individual Defendants are "directors," they have no terms of office. *Id.* Crescent has had only three board meetings with minutes during its 14-year existence. *Id.* Equally importantly, Crescent has always been severely undercapitalized. SAC ¶ 95. Its only asset is the Site, which its tax returns value at $734,681, together with debts totaling $737,167. SAC ¶ 97. Crescent also owes over $1,000,000 in unpaid property taxes. SAC ¶ 98.

Second, the SAC also plausibly alleges sufficient facts to show that the Individual Defendants used their control over Crescent to shield their assets from their potential CERCLA obligations. The defendants initially placed ownership of the Site in an entity Mavellia controlled, Wharton Pryce Realty Company, Inc., with the intention of then transferring the Site to another Mavellia-controlled entity that had assets. SAC ¶¶ 68-69. However, after receiving a report stating that the Site was contaminated with hazardous waste, the defendants instead changed the Brownfield Cleanup Program applicant to Crescent and transferred the Site from Wharton Pryce to Crescent for no monetary consideration. SAC ¶¶ 77-85. Because Crescent was undercapitalized, defendants thought there would be no financial consequences if they did not fulfill their Brownfields obligations: for instance, at one of their board meetings, the Individual Defendants stated their intent to "walk away" if DEC demanded too much cleanup and noted that this possibility provided them with "leverage" in their discussions with the State. SAC ¶ 96, 137. Indeed, Crescent and the Individual Defendants did ultimately "walk away," leaving the State to clean up the Site, SAC ¶ 92, and sue an underwater company for its costs.

### 4. *The Individual Defendants' factual assertions cannot be considered here.*

Finally, the Individual Defendants argue that a citizens participation plan issued by DEC in connection with the Brownfield Cleanup Program should be deemed incorporated into the SAC. *See* Letter, ECF No. 86. Based on this document, they contend they are not liable for the State's costs because they were not involved in the initial disposal of hazardous waste. *Id.* But the citizens' participation plan cannot be deemed incorporated into the SAC because it is not referred to or even mentioned in the SAC. *Cf. Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (complaint deemed to include any documents incorporated in it by reference). Moreover, the case law cited by defendants shows that judicial notice of "letters or reports" in DEC's file is inappropriate on a Rule 12(b)(6) motion where "the analysis depends on what is between the four corners of the complaint." *White Plains H. Auth. v. Getty Properties*, 2014 WL 7183991 at *2-3 (S.D.N.Y 2014). And even if the Court could take judicial notice of

the plan, CERCLA's strict-liability standard for current owners and operators does not consider their role in disposal. *See Next Millennium Realty, LLC v. Adchem Corp.*, 690 F. App'x 710, 714 (2d Cir. 2017) (liability extends to current owners even though they did not cause the pollution).

      For all these reasons, the Court should deny defendants' request for a pre-motion conference and to file a motion to dismiss. We thank the Court for its consideration.

      Respectfully submitted,

      /s/ *Austin Thompson*

      Assistant Attorney General
      New York State Office of the Attorney General
      Environmental Protection Bureau
      28 Liberty Street, 19th Floor
      New York, NY 10005
      (212) 416-8464

4